Filed 1/19/21  P. v. Duckett CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B301927 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A308967) |
| v. | |
| ROOSEVELT DUCKETT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Senior Assistant Attorney General, Charles S. Lee and Douglas L. Wilson, Deputy Attorneys General for Plaintiff and Respondent.

---

## INTRODUCTION

In 1974, appellant Roosevelt Duckett was convicted of first degree murder, and sentenced to life in prison. Court records indicate appellant was not convicted under the felony murder rule or the natural and probable consequences doctrine.

Nevertheless, in March 2019, appellant filed a petition seeking resentencing under Penal Code section 1170.95.[1] The court appointed counsel for appellant, received the People's opposition to appellant's petition, and set a hearing

---

[1] Effective January 1, 2019, Senate Bill No. 1437 "'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723 (*Martinez*).) It also enacted Penal Code section 1170.95, permitting those who claimed they could not be convicted of murder under the new rules to petition for resentencing. (All further undesignated statutory references are to the Penal Code.) Among other things, section 1170.95 provides that the People have 60 days to oppose such a petition, and thereafter the petitioner has 30 days to reply. (§ 1170.95, subd. (c).)

"for receipt of petitioner's response." However, before any response was received, and three days before it was due, the court denied the petition, finding that appellant was not entitled to relief as a matter of law.

On appeal, appellant does not dispute his ineligibility for relief. Instead, he argues the denial of his petition before the receipt of his reply constitutes both statutory error and structural error requiring reversal. While we agree the court erred by denying his petition before receiving his reply, we disagree the error was structural. Because we conclude appellant is ineligible for relief as a matter of law, we find the court's error harmless and affirm the order denying appellant's petition.

## STATEMENT OF RELEVANT FACTS

In 1974, appellant was convicted by a jury of first degree murder. According to the probation officer's report, appellant and another man stole a car and drove up to a group of six people. They shouted, "'Crip here,'" and appellant's companion opened fire, killing one, and injuring two others. Appellant was sentenced to life imprisonment, with the possibility of parole.

In March 2019, appellant filed a petition for resentencing under section 1170.95. The court reviewed the petition and appointed counsel. The People filed a response in August 2019, contending appellant was not entitled to relief because he was not convicted under the felony murder

3

rule or the natural and probable consequences doctrine. Attached to the People's response were:

–The information, showing that appellant was charged with one count of first degree murder, two counts of assault with a deadly weapon, one count of grand theft auto, and one count of joyriding.

–The jury instructions in the underlying case, showing that no instructions regarding the felony murder rule or natural and probable consequences theory were given.

–The jury verdict form showing appellant was convicted of first degree murder.

–A transcript from the sentencing hearing, at which the court recounted that appellant was an "active participant in the crime of murder," "drove the car with" the actual shooter, "disposed of the killer's gun," and was "just as involved as the man who actually pulled the trigger." The court opined that "to say that [appellant] didn't know what was going to happen, you have to be far more naïve than I am."

–A parole decision denying parole and reporting that appellant denied he was the shooter in the underlying crime, but admitting he was the "driver of the vehicle."

In August 2019, the court issued a minute order noting receipt of the People's response and setting a hearing on September 23, 2019 "for receipt of petitioner's response." However, on September 20, 2019, before appellant filed a response, the trial court issued a ruling, summarily denying appellant's petition because he was "not entitled to relief as a matter of law for the following reason: . . . The petitioner was convicted of murder but the record of conviction reflects that the petitioner was not convicted under a theory of felony-murder of any degree, or a theory of natural and probable consequences. There are no jury instructions for felony murder or natural and probable consequences." Appellant timely appealed.

## DISCUSSION

**A.** ***Senate Bill No. 1437 Permits Those Convicted of Felony Murder or Murder Under a Natural and Probable Consequences Theory to Petition for Re-Sentencing***

"On September 30, 2018 the Governor signed Senate Bill 1437, which, effective January 1, 2019, amended sections 188 and 189, significantly modifying the law relating to accomplice liability for murder." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 325, review granted

5

Mar. 18, 2020, S260493[2] (*Verdugo*).) Specifically, "Senate Bill No. 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*Martinez, supra*, 31 Cal.App.5th at 723.)[3]

---

[2] The review order states: "Further action in this matter is deferred pending consideration and disposition of a related issue in *People v. Lewis,* S260598 (see Cal. Rules of Court, rule 8.512(d)(2)), or pending further order of the court." (*Verdugo*, S260493, Supreme Court Mins., Mar. 18, 2020.) The review order in *People v. Lewis* states: "The issues to be briefed and argued are limited to the following: (1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)[?]" (*People v. Lewis, supra,* Supreme Court Mins. Mar. 18, 2020.)

[3] Prior to the enactment of SB 1437, the felony-murder rule made "a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*People v. Chun* (2009) 45 Cal.4th 1172, 1182.) "[U]nder the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.'" (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.)

6

"Senate Bill 1437 also added section 1170.95 to the Penal Code, which permits an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if he or she could not have been convicted of first or second degree murder because of Senate Bill 1437's changes . . . ." (*Verdugo*, *supra*, 44 Cal.App.5th at 326, rev.gr.)

Section 1170.95 requires a petition for relief to include certain basic elements, such as a declaration that the petitioner is entitled to relief, information regarding the underlying conviction, and whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1).) "If any of the required information is missing and cannot be readily ascertained by the court, 'the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information.'" (*Verdugo*, *supra*, 44 Cal.App.5th at 327, rev.gr., quoting § 1170.95, subd. (b)(2).)

Section 1170.95, subdivision (c), provides for "two additional court reviews before an order to show cause may issue, one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95—that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo*, *supra*, 44

Cal.App.5th at 328, rev.gr.) "Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (*Id.* at 327, citing § 1170.95, subd. (d)(1).)

**B.** ***The Court Erred by Dismissing the Petition Before Receiving and Considering Appellant's Reply Brief***

As set forth above, a court makes two prima facie determinations under section 1170.95, subdivision (c) -- one before the parties' briefing, and one after. Because the court had appointed counsel for appellant, and had received the People's opposition to the petition, we conclude the court's denial of the petition was a finding that appellant had failed to make the second prima facie showing. (See *Verdugo*, *supra*, 44 Cal.App.5th at 332, rev.gr. ["The structure and grammar of [section 1170.95, subdivision (c),] indicate the Legislature intended to create a chronological sequence: first, a prima facie showing; thereafter, appointment of counsel for petitioner; then, briefing by the parties"]; *id.* at 328 [second prima facie review occurs "after briefing by both sides"].) The denial order did not mention the People's opposition, but the reason given for the denial was one advocated by the People, viz., that appellant's murder

conviction was not based on a theory of felony murder or a theory of natural and probable consequences.[4]

Appellant argues the court erred by denying his petition before receiving and considering his reply. Whether section 1170.95 permits the court to find the second prima facie showing was not made under subdivision (c) after receiving an opposition from the People but before appellant's statutorily permitted reply is received or due is a question of statutory construction, which we review de novo. (*Verdugo*, *supra*, 44 Cal.App.5th at 328, fn. 8, rev.gr.)

The language of the statute is clear: after the People file an opposition, "the petitioner may file and serve a reply within 30 days after the prosecutor response is served." (§ 1170.95, subd. (c).) As *Verdugo* noted, under subdivision (c) of section 1170.95, the court may deny the petition either "before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95" or "after briefing by both sides . . . ." (*Verdugo*, 44 Cal.App.5th at 328, rev.gr.; see also *id.* at 330 [the second determination is to be made "with the benefit of the *parties'* briefing and analysis" (italics added)].) Here, it is undisputed that the court summarily denied the petition after receiving the People's opposition but without affording

---

[4] Specifically, the People argued: "Petitioner was convicted by a jury of first-degree murder, two counts of assault with a deadly weapon and unlawful taking of a motor vehicle. The jury was not instructed on either felony murder or natural and probable consequences theories of culpability."

appellant an opportunity to file a timely reply.  This was error.  We next address whether this error was harmless.

## C.   *The Error Was Harmless*

### 1.   *Appellant Was Ineligible for Relief as a Matter of Law*

Appellant does not dispute he was ineligible for relief as a matter of law.  Instead, he argues that denying his petition without receiving or considering his reply brief amounted to an unconstitutional denial of his rights to due process and assistance of counsel, and constitutes structural error, requiring reversal.

*People v. Daniel* (2020) 57 Cal.App.5th 666 (*Daniel*) rejected a similar argument.  There, the trial court summarily denied the appellant's section 1170.95 petition without appointing counsel.  (*Daniel, supra,* 57 Cal.App.5th at 670.)  The appellant argued that "'the deprivation of his right to counsel is a structural error,' requiring reversal without regard to prejudice."  (*Id.* at 674.)  While the court of appeal agreed that the trial court violated section 1170.95, it held this violation was not structural.[5]  Citing *People v.*

---

[5]    The *Daniel* court acknowledged that it "broke with other Courts of Appeal and held that 'the right to counsel attaches upon the filing of a facially sufficient petition that alleges entitlement to relief'—that is, a petition that includes all the information required under section 1170.95, subdivision (b)." (*Daniel*, *supra*, 57 Cal.App.5th at 673.)  We express no opinion on that issue.

*Perez* (2018) 4 Cal.5th 1055, 1063-1064, the court held that "legislation 'intended to give inmates serving otherwise final sentences the benefit of ameliorative changes to applicable sentencing laws,' including Senate Bill No. 1437, does not implicate the Sixth Amendment." (*Daniel, supra,* 57 Cal.App.5th at 675.) It further held a constitutional right to counsel "'only kicks in once the defendant makes a prima facie showing of entitlement [to] postconviction relief.'" (*Ibid.*) Thus the *Daniel* court affirmed the denial of the petition despite the error, finding that, though the defendant "had a statutory right to counsel upon filing a facially sufficient petition, the violation of that right was not a structural error—and thus not reversible per se—because it was not "'analogous to" . . . "the total deprivation of the right to counsel at trial.'" [Citations.] Rather, the failure to appoint counsel upon the filing of a facially sufficient petition under section 1170.95 *is* susceptible to review for prejudice. [Citation.] And harmlessness is established if the record 'conclusively demonstrate[s] that [the petitioner] was ineligible for relief as a matter of law.'" (*Ibid.*) Because "records in the court's own file—in this case the jury instructions—demonstrate that the petitioner is ineligible for relief as a matter of law," *Daniel* affirmed the denial. (*Id.* at 666.)

We agree with *Daniel*'s analysis. While the trial court erred by summarily denying appellant's petition before receiving and considering his statutorily permitted reply, this error was harmless because the record conclusively

11

demonstrates that appellant was ineligible for relief as a matter of law.  Appellant does not suggest otherwise.[6]

## 2. *Appellant's Cases Are Unhelpful*

Appellant cites the dissenting opinion in *People v. Tarkington* (2020) 49 Cal.App.5th 892, review granted Aug. 12, 2020, S263219, for the proposition that the Legislature intended a petitioner to be represented by counsel upon the filing of a facially sufficient petition, and that this counsel would help the court determine whether to hold a resentencing hearing.  But as explained above, we agree the trial court erred in denying appellant's petition without waiting for appellant's reply.  The question is whether this error warrants reversal.

Appellant cites *Bell v. Cone* (2002) 535 U.S. 685, 695-696 and *People v. Doolin* (2009) 45 Cal.4th 390, 453 for the proposition that defendants facing charges have a right to counsel at "all critical stages," and cites *United States v. Yamashiro* (9th Cir. 2015) 788 F.3d 1231, 1235 and *People v. Rouse* (2016) 245 Cal.App.4th 292, 297 for the proposition that sentencing is a "critical stage."  But appellant was not

---

[6]    Appellant also argues that the court's failure to wait for his reply brief violated his right to due process, but forfeits the argument by failing to develop it or support it with citation to authority.  (See, e.g., *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [absence of cogent legal argument or citation to authority forfeits the contention; "[w]e are not bound to develop appellants' arguments for them"].)

12

denied counsel at a sentencing hearing: he was instead denied the assistance of counsel when the court was deciding whether a new sentencing hearing might be ordered. As *Daniel* stated: "structural error may occur when, *after* an order to show cause issues, a defendant is denied counsel at a hearing under section 1170.95, subdivision (d). Here, however, the petition was denied before any such order was issued." (*Daniel*, *supra*, 57 Cal.App.5th at 675.) Here, too, appellant's petition was denied before the court ordered a hearing under section 1170.95, subdivision (d). Because appellant was ineligible for relief as a matter of law, the court's error was harmless.

## DISPOSITION

The court's order denying appellant's section 1170.95 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

14